Thank you, Your Honors. Abe Zubayi on behalf of the appellant, Mark Vinzant. I'd like to reserve two minutes for rebuttal. Your Honors, the lower court improperly granted summary judgment for appellees on Mr. Vinzant's FTCA and Eighth Amendment claims on procedural grounds, not on the actual substantive merits of the case. Instead of actually ruling on whether or not appellees were negligent, the lower court held that Mr. Vinzant did not produce admissible expert evidence that defendants breached the standard of care. It held this, even though Mr. Vinzant produced a declaration from his treating physician, Dr. Latch, in which Dr. Latch declared that defendants breached the standard of care by failing to provide Mr. Vinzant with physical therapy or chiropractic care while in prison. The district court punitively held that Mr. Vinzant failed to make appropriate expert disclosures focusing on his purported failure to provide an expert report pursuant to Rule 26A2B. However, the operative version of the rule required an expert report only for one specially retained or employed to provide expert testimony in the case. Sotomayor, let's suppose that Dr. Latch were fully disclosed and that the written requirement of the rules was accommodated. Would a district judge be required to accept the opinion of a chiropractor about the standard of care for an M.D. with some substantial orthopedic experience? Yes, Your Honor. First of all, we cited case law that shows that although the law used to be that the doctor testifying as to the standard of care had to be that specific specialty, the law has since changed and moved to so long as the physicians are practicing in the same sphere of influence, sort of back hair and back hair, then they can opine as to the standard of care there. So would it have been okay if Dr. Latch were a naturopath? I don't believe that's a medical certificate holder in California, so I don't know what the answer would be for a naturopath. But a chiropractor is considered one of the certificate holders in California. And, for example, we cited cases to you showing that a podiatrist can opine on an orthopedic surgeon or a one case has allowed a doctor to opine for a chiropractor. And the courts have held you have to look at what was being diagnosed, what the standard of care issue is, and here a back specialist, which a chiropractor is, our position is could certainly opine on the standard of care for somebody who's having back pain. So he doesn't need to meet the expert requirement because? So. In terms of filing a report, et cetera. Because he's a treating physician, Your Honor. But where do you get that out of – how do you jump from treating physician to what he actually put in his little – what he was going to talk about, which is reviewing external records and that sort of thing? Well, Your Honor, there is – the cases that were cited to say that standard of care can never be determined said – all said that there was evidence in the record suggesting that the treating physician did not determine their opinion during the course of treatment. And we don't have a perfect record here, but looking at the declaration, it does appear that the opinions for standard of care in this instance would have been developed during the course of treatment. What happened was Dr. Latch saw Mr. Van Zandt immediately after he left prison, not for litigation that was instituted years later. He began to see Mr. Van Zandt for the exact issue that he alleges caused – he was harmed about in prison. So the issue was that he didn't get any back treatment in prison, physical therapy and such. And scar tissue formed there, Dr. Latch saw. He reviewed the records. And just like any doctor who has to deal with the mess of a doctor previously or who you're going to for a second opinion, that doctor would normally determine whether the standard of care is breached, just like if you had an arm that was broken and you didn't get a cast for months. And you went to a second doctor. That's not why they treat you. They go to the second doctor for treatment, not for a standard of care opinion. That's true. You're right. So, I mean, what – it's after the fact and he's going back and reconstructing. So you can be a treating physician at one point, but then become an expert. Isn't that true? Well, I think you're an expert and a treating physician. The – the – And what – and in that case? And in that case, if your opinion would have been developed during the course of treatment instead of afterwards, you do not have to do an expert report under the rule. And that's what Goodman says. And – Well, that works if the testimony relates to the diagnosis. But if the testimony relates to the standard of care applicable to a prior treating physician, what's your best case that says that it's appropriate, or that it's exempt from the usual disclosure rules? Because those are two fundamentally different types of testimony. Your Honor, we cited the Fielden case that permitted the physician to test – that's a Sixth Circuit case – that permitted the physician to testify on causation in the context of standard of care. And we also cited to you the Schreiber case that pointed out this may well include opinions regarding causation and standard of care because such issues are inherent in the physician's work. We also cited to you the Norris case. But I think the problem with that is it's inherent in the work of the physician in treating. But once you go beyond treating, you say I want you to examine other records to – and analyze the standard of care. Isn't that – doesn't it take it out of the treating physician rule? I don't think so, Your Honor. It's my view of the case law. And Fielden touched on this. If the doctor – it's all about when the – it's not about the opinion. It's when the doctor formed the opinion. And if the doctor is – in reviewing the record, which is something that a doctor would do in the normal course when treating a patient, determines, oh, my gosh, this previous doctor really messed up. That determination, if it's during the course of treatment and not after, as a retained, paid expert, that is developed during the course of treatment. And in the Fielden case, for example, the doctor reviewed all of the previous medical records of the patient and then determined that the standard of care was breached. They just did that during the course of treatment. Even if, Your Honors, you disagree with this analysis and say that standard of care always has to be determined outside of the course of treatment, Mr. Vinzant still should be able to be given a chance to go back and file an expert report, both under Mr. Goodman, which was the same procedural posture and almost the same facts except causation as opposed to standard of care. The Court only applied the rule purely prospectively. And because Goodman did not come out until after Mr. Vinzant even filed his objections to the magistrate judge's report and recommendation, he, as a similarly situated litigant, should be given the opportunity to go back. Can we talk a little bit about your deliberate indifference claim, your client's claim? Yes, Your Honor. Is it based on the failure to refer him promptly to physical therapy? Timely, post the referral. The referral was for 60 days, and they just breached that deadline. But when he was finally scheduled for physical therapy, the prison officials wanted him to wear, was it a wrist bracelet of some kind? Well, he was in so much pain at the time that they decided to take him and they put him in a black box. My question is not looking for an explanation, but a yes or no. Yes. It is true they asked him to wear a brace, a safety device for their purposes, for custodial purposes. That's not an issue in this case, is it? The fact that he was forced, he was asked to wear that brace is not an issue in this case 30 days later. And he declined to do it? Because of pain, yes. Okay. So what we're talking about in terms of deliberate indifference is the difference between the 60 days that Dr. Fernandez requested and the 90 days that it actually took? That's true. So we're talking 30 days. It's yes, Your Honor. And what happened in those 30 days? He continued to, as Dr. Latch and Dr. DuMouchel declared, he continued to, get increased scar tissue formation because of the delay. And there's nothing in the record to suggest that Mr. Vinzant couldn't have gone to physical therapy or withstood the pain had a timely physical therapy been given. I don't understand that part, because if he wouldn't wear the security apparatus, does it matter whether he was referred for the evaluation on January 1 or February 28? Well, Your Honor, to that, that is an issue that they would be able to argue as for a reason for no damages at trial. But here there's nothing in the record to suggest or to say without a genuine issue of material fact that he wouldn't have gone 30 days earlier. He didn't go 30 days later because he was in so much pain he couldn't wear the black box. So let me just understand. You would say there's a material issue of fact. He would go back for a trial. And basically you'd be arguing over whether in those 30 days the pain worsened to a degree that he couldn't wear the apparatus. That's right. If Mr. Vinzant could testify. Even let's assume that he could. Let's just assume that he either could wear it or they didn't make him wear it either way. We're still really talking, as I understood it, the final approval came on December 5th, so you're talking between February 5 and February 28. So we would have to say that even though the doctor said 60 days, that basically 23 days delay is of constitutional significance such that he would have a trial. Would that be the holding? The holding, Your Honor, would be that when there is a scheduled physical therapy and that is ignored with no reason in the record for why, other than what we would elect deliberate indifference, that, yes, the decision to ignore, regardless of the time, if there's no reason, could amount to deliberate indifference. And I am very sympathetic, you know, to not getting this, and I don't know why, and we'll have a chance to figure that out. But my question would be, is simply the scheduling timing of a magnitude that it is a constitutional violation, I mean, what if the doctor had said 90 days and we wouldn't be here? Well, we wouldn't be here under deliberate indifference, Your Honor. We would be here probably under medical negligence. So you're saying that once they recommended it for 60 days, that any day beyond that day would be, would get you at least to a trial on deliberate indifference? As long as there's not evidence in the record suggesting that there was a reason, but the blatant decision to ignore it with nothing in the record to explain why, yes, it would, I mean, we're now counting, we would be counting days then, because what if they said you need it in 10 days, and then they waited 40? Those are the kind of issues where as long as there is a scheduled date and there's absolutely no reason in the record why that deadline was broken, it seems like that gets you a trial issue of fact. If you can prove the other elements as well. And who are the proper defendants on your deliberate indifference claim? Your Honor, we believe it's Defendant Fernandez, because he ordered the physical therapy, and there's evidence to show that Mr. Vinzant went repeatedly afterwards to complain about his medical issues. And so we think there's a trial there. To Dr. Fernandez? To Dr. Fernandez and his underlings at sick call. And then, I see I'm running out of time. Let me try to finish your question quickly. And then there was Mr. Vinzant put in evidence that the other defendant said, you're never going to get any help here. You're only here for a short amount of time. You're going to have to wait until you leave. And so they just ignored him. Thank you, Your Honor. Thank you, counsel. We'll hear from the government. Good afternoon, Your Honors. May it please the Court. I'm Peter Kosinatz on behalf of the FLEs. Can I ask a simply personal curiosity question? Why is the U.S. attorney from Arizona handling this case? The injury occurred in Louisiana. Vinzant was flown to the FCI in Oklahoma, and he served his time in California. Why do you guys have him? My understanding is that at a certain point, the defense of the case was transferred from the Central District of California to our office in Phoenix. I came on to the case. Because? Subsequent to that. Actually, I don't directly know the reason for the transfer. I came on the case after the appeal was already in progress. Okay. Just curious. The district court summary judgment decision should be affirmed because Mr. Vinzant received continuous and ongoing medical treatment throughout his entire stay at Victorville. The record is undisputed that he saw prison medical providers more than 40 times in an eight-month period. Isn't there some evidence in the record that this delayed from the time a medical professional, Dr. Hernandez, said you need physical therapy and the time that it actually happened that some of that was due to people on the medical staff telling Vinzant, hey, you're going to get out of prison soon anyway. You can go out and take care of this on your own. Isn't there some evidence of that? There's no support for the notion that any of the five individually sued Vinzant defendants were personally involved in delaying the scheduled referral for physical therapy. With respect to Dr. Hernandez, all they point to is his signature on referral. That is not enough to support an inference of personal involvement. In response to my question, you're telling me there's absolutely no evidence in the record that any medical professional in the prison system ever told the plaintiff in this case that he was going to get out soon anyway and he could get his treatment in the outside world. You're telling me there's absolutely nothing in the record to that effect? The only thing in the record relates to alleged statements set forth in an unsworn declaration from Mr. Vinzant involving the deputy warden and the health services administrator. Statements made well before the physical therapy referral was actually signed. After that point, there is no evidence whatsoever. And, in fact, the evidence of record tends to negate any conceivable inference to the contrary, because after the referral was signed, the Prison Utilization Review Committee approved the referral and then the appointment, the evaluation was in fact scheduled. Throughout that entire course of time, Mr. Vinzant continued to receive extensive ongoing and continuous medical treatment, including injections with anti-inflammatories, pain relievers, steroids, muscle relaxants and other medications. If there had been some sort of intent to deliberately deny him medical treatment in response to his complaints, none of those facts would be in the record. With respect to the fact that he was going to get out soon anyway anyway. Let me ask you about that. If you really narrow it, from my perspective, here's what we – it boils down to, is that basically an order was signed for 60 days and he didn't really get his physical therapy appointment even scheduled for 90 days. And his allegation is that basically his condition certainly worsened over that time as a result of not getting it within the 60 days. And in his view, you can draw these inferences that even if you didn't give him his physical therapy, whether it's because he's going to get out or just because of overloading or whatever, that that creates a material issue of facts. And my understanding is if it were to go back, that would be, in effect, the factual Donnybrook that you both would be dealing with. So would you address that point and what the government's view on that is? Yes, Your Honor. I think that's exactly right. The alleged deliberate indifference involves this sort of delta between the 60 days and the 90 days, him having to wait about another month to get his physical therapy appointment. That does not constitute deliberate indifference as a matter of law for several reasons, mainly because he continued to receive other treatment, substantial other treatment to, quote, relieve his pain and alleviate conditions that could be causing pain. It was mostly medicine, wasn't it, medication? A constellation of medications. Have you ever had severe back issues? You're a pretty young person, but have you ever had real bad back issues? Have you ever experienced real excruciating back pain? I have, Your Honor, but I don't think that's respectful. I don't think it's relevant today. Well, all medicine does is mask the pain. I respectfully beg to differ on that because he didn't just get pain relievers. He got anti-inflammatory injections, which shrink swelling. He got steroids, which also operate to shrink swelling. And he got muscle relaxants, which tend to reduce muscle contractions, which can also cause pain. And many soft tissue injuries, as our expert opined in this case, are treated in that fashion without resorting to other treatment modalities. Here, in this case the ---- I don't understand why you're saying that as a matter of law, that claim fails based on your current argument. Because what he's saying, as I understand it, is that scar tissue and other things formed during this 30-day period that left him with permanent injuries. So the fact that other treatment was given would not negate the fact that he has permanent injuries caused by the alleged deliberate indifference. Under the very high standard of deliberate indifference, where a patient receives treatment, the plaintiff has to show that the treatment is so woefully inadequate as to constitute no treatment at all. That's how the Sixth Circuit conceived of this in the Mitchell v. Heninger case, applying Estelle v. Gamble. Negligence, gross negligence, even medical malpractice doesn't rise to the level of deliberate indifference. Here, during this interregnum, this approximate 30-day period, he continued to see medical providers and continued to get treatment. Under Estelle v. Gamble in Mitchell, that's enough to take this out of the realm of deliberate indifference. No one at the prison was neglecting him when he was in pain. He got treatment to address pain issues. That's almost exactly the case in Mitchell, where there was a nine-month delay in delivering prescribed physical therapy. Here, there's just a one-month delay. Do we know from the record what occasioned the delay? I'm not asking about any medical treatment he may have received in the interim. Do we know from the record what occasioned this delay? No, Your Honor. So it could be oversight, deliberate neglect, informal punishment, any number of things. There is no evidence in the record to support any inference of a deliberate effort. Well, there's nothing in the record. There's nothing in the record, right? I mean, there's nothing from the prison officials saying, this is why it took this length of time. We had a change in who provides outside orthopedic or physical therapy services. We don't have enough staff. The facility is overcrowded. There's nothing like that in the record, right? The record does contain some evidence that these services were contracted out to private care providers, who in turn subcontracted the services to actual physical therapists. That is the extent of the record in this case. The plaintiff never developed any further evidence, despite having three years to work up discovery and to get to the point where we are today. He was pro se during this time, wasn't he? He was pro se. The undisputed facts of records, though, are that he continued to receive continuous, regular, and extensive other treatment modalities. But let's assume hypothetically that the prison officials here had said, we're just not going to treat him. We'll give him some pain relievers, but we're just not going to treat the problem because he's getting out of prison, even though we know that we could help assist with the eventual problem. And let's assume further that then that failure to treat caused serious injury. Why doesn't that state a cause of action for deliberate indifference? Again, if that's hypothetically. I know you're wrapped around the facts of this case. But what your argument seems to be is, hey, if we give them pain medication, that's enough. Well, this wasn't just pain medication. No, no. I'm talking hypothetically. Why doesn't it state a cause of action if you say, we're not going to treat him? In other words, if the evidence is in the record, we're not going to follow the recommendation for physical therapy because he's getting out and we really don't care. We're going to give him some pills. And if the evidence then came in, hypothetically in a different case, that the failure to treat caused permanent injury, why wouldn't that state a cause of action for deliberate indifference? Well, I think we'd have to look at the evidence and to look at whether this rose beyond a level of medical malpractice, gross negligence. We'd also have to look at whether the defendants actually drew the inference that this patient would be harmed by such delay. See, I'm giving you a hypothetical and you're answering with your argument. I mean, I understand the difference potentially between the hypothetical and the argument you're making. But my question is, if prison officials deliberately set out to ignore a recommendation and a referral and said, we're not going to do it, we're just going to give you pain medication, and that should be enough, why doesn't that state a claim if there are permanent injuries involved? If they make a decision, they're not going to follow the recommendation. They're not going to follow the referral. They said, you know, you're going to get out in six months, so we're not going to treat you, even though the doctor said you should be treated. Instead, we're going to give you an aspirin or something to help you with the pain. Why wouldn't that at least state a cause of action for deliberate indifference? It might state a cause of action, but depending on all of the other facts of record, it wouldn't necessarily create a genuine issue of material effect. You're saying the hypothetical might, but the facts of this case don't. Absolutely. Absolutely. So if after looking through the record, we agree with you that nobody involved as a defendant made any statements about delay or the fact that he was getting out, we then have a situation where we know it was delayed 25 or 30 days, and he does make an allegation that that caused, you know, further medical degradation or whatever. How do you evaluate when it's the government's burden, once a case like that is put forward, to then introduce some evidence, or when you just leave it to the plaintiff's allegations to figure out if they – if he has raised a material issue of fact? Well, I think in this case, there's no showing of actual harm. There aren't facts in the record to suggest that there was even actual harm that could have been caused. And the fact is that the government, as a government, has a duty to address the issue of harm, and the fact is that the Chiropractic Declaration, the Chiropractic declarations that they refer to, don't address this brief 30-day period. And on the other hand, the other facts indicate that there was this continuous provision of other medical care during this period of time. So even on the question of harm, they can't get beyond summary judgment. And I think really that's what the government needs to do, is to – the government can satisfy its burden in one of two ways. It can point to affirmative evidence tending to negate an inference of deliberate indifference, or it can point out gaffes in the evidence from the plaintiff on the And in this case, the government has done both. We've pointed to affirmative facts that tend to negate an inference of deliberate indifference, including the continuous provision of medical care and the actual scheduling of his physical therapy treatment. So I guess the one thing that has been mentioned here that the government didn't do is we don't know why it was delayed. Is there any evidence in the record as to why it didn't get scheduled within the 60 days? There – the only evidence that I'm aware of is the fact that the prison contracted with these private companies in order to address the provision of these physical therapy services. There's no evidence in the record to suggest that any of these five individually sued defendants were involved in that process or were personally involved in postponing this scheduling of this appointment. Thank you. Thank you. Rebuttal. Thank you, Your Honors. Just three quick points. First, the point that defendants made about the need for – that there was other treatment, that does not negate the fact that the medical practitioner found or made a finding that physical therapy needed to be scheduled within 60 days. So the fact that some other pain medication is given, that doesn't change, you know, what the medical practitioner found. Second, I just wanted to, you know, just stress that the burden is on the government to provide this evidence. And the government has not provided evidence showing there was no harm during that 30 days. Well, I guess maybe we step back. What is your response to his argument that none of the five defendants at issue was in – that there's evidence in any way to link them with a delay or with any malintent vis-à-vis the delay? Right. Your Honor, as the magistrate judge found, the fact that Mr. Benzant was a habitual, continual attendee at the sick call explaining, you know, I'm in pain, I need treatment. He saw Mr. Fernandez after he was given the 60-day referral. We cited to you that even after that, on January 5th, 2006, there was a notation in his record that he has a physical therapy appointment. But is there anything linking them to why there's a delay or for being responsible for a delay? In his sort of testimonial and chronology, he explains how defendants, Misra, Holoneck, and Misra and Holoneck specifically indicated that he would not receive additional medical care because of the short time in his sentence. That's on ER 190 to 191. And that is his own personal chronology of the facts, but I think it can be assumed that he testified to that at trial because it's consistent with his records. And the last point I wanted to make, Your Honor, is that the fact that they contracted with an outside vendor for services for physical therapy has no bearing on, you know, who is responsible for the scheduling of that physical therapy. Very good. Thank you for your argument and thank you for your pro bono representation. Thank you. We truly appreciate it. We appreciate it as well. Thank you. The case is starting to be submitted for decision and will be in recess.
judges: HAWKINS, THOMAS, McKEOWN